UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FOOTBRIDGE LIMITED TRUST,

    Plaintiff,

    v.

JAMES ZHANG,

    Defendant.

Civil Action No. 04-347 (CKK)

**MEMORANDUM OPINION**
(December 15, 2006)

Plaintiff Footbridge Limited Trust filed this action alleging legal malpractice and negligence against Defendant James Zhang.  Before the Court is Defendant's *pro se* [33] Motion for Summary Judgment, filed pursuant to Federal Rule of Civil Procedure 56.  Upon reviewing Defendant's Motion and all related filings, the Complaint, and the relevant statutes and case law, the Court shall DENY Defendant's [33] Motion for Summary Judgment.

## I.  BACKGROUND

This Court strictly adheres to the text of Local Civil Rule 56.1 (identical to Local Civil Rule 7.1(h)).  According to Local Civil Rule 56.1, the moving party to a summary judgment motion is required to separately provide "a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement."  LCvR 56.1.  Defendant did not explicitly comply with this mandate in his Motion for Summary Judgment, as Defendant includes exactly two paragraphs entitled "fact" in his motion for summary judgment rather than a separate, complete statement of uncontested material facts.

Defendant's deviation from the intent of the Local Civil Rule undermines the purpose of the Rule, which is to assist the Court in quickly determining if any facts are actually in dispute. *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 153 (D.C. Cir. 1996) ("[R]epeatedly blending factual assertions with legal argument, the 'relevant facts' section does not satisfy the purposes of a [Rule 56.1] statement."); *Robertson v. Am. Airlines*, 239 F. Supp. 2d 5 (D.D.C. 2002) (striking defendant's motion for summary judgment for noncompliance with Local Rule 7 and 56.1 because the "statement of material facts not in genuine dispute" included no citations to the record and improperly mixed factual allegations with argument).

While the purpose of Rule 56.1 was to "plac[e] the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record," *Finnegan*, 101 F.3d at 151, the Court shall accept the additional burden placed on it in this instance by Defendant and distill and compare the facts delineated in Defendant's dispositive motion, attachments, and related filings as compared to those delineated in Plaintiff's Complaint and filings related to Defendant's Motion for Summary Judgment when considering Defendant's dispositive motion.  In so doing, the Court has determined that Plaintiff's claims survive Defendant's summary judgment motion.

For clarity, the Court shall repeat the facts as set forth in the Court's [26] Memorandum Opinion denying Defendant's previously-filed Motion to Dismiss.  On March 3, 2004, Defendant removed this action to this Court from the Superior Court of the District of Columbia pursuant to 28 U.S.C. § 1332.  Plaintiff alleges that on or about November 30, 2000, it contributed $1,500,000.00 to a loan made to James M. Dwyer Real Estate Equities International, JMD, VJ

2

Locust, LLC, Dwyer VJ-Locust, L.P., James M. Dwyer, individually, and Margaret A. Dwyer, individually (collectively, "Dwyers").  Compl. ¶¶ 5-6.  Plaintiff made this loan through Cambridge Holdings Group, Inc. ("Cambridge").  *See id*. ¶ 6.   The Dwyers were to secure the loan by security interests in certain parcels of real property in New Jersey.  *Id.* ¶ 7.  The Dwyers later defaulted on the loan and filed for bankruptcy.  *Id.* ¶ 8 n.1.

Plaintiff alleges that Defendant was corporate counsel to Cambridge and represented Cambridge and Plaintiff during the course of the transaction.  *Id.*  ¶¶ 4, 9.  Plaintiff's Complaint arises from its discovery, during the course of the bankruptcy proceedings, that Defendant "elected not to obtain Title Insurance for the collateral in New Jersey."  *Id*.  Furthermore, "Defendant failed to file the Deeds of Trust perfecting Cambridge's security interest, delivered to him at the time of the closing, for a period of approximately seven (7) months.  The closing occurred on November 30, 2000.  The Deeds of Trust were filed on July 5, 2001."  *Id.* ¶ 11.  Between the time of closing and the time Defendant finally filed the security interest, "numerous [additional] liens were placed upon the property . . . ."  *Id.* ¶ 13.  The property was eventually sold at auction for $6,200,000.00.  *Id.* ¶ 14.  Plaintiff alleges that "[h]ad Defendant timely filed the Deeds of Trust, Footbridge would have received in excess of two million two hundred fifty thousand dollars" from the sale.  *Id.* ¶¶ 9, 15.  Instead, Plaintiff alleges that "[d]ue to Defendant's failures [to obtain Title insurance and timely file the Deeds of Trust], Plaintiff may not receive *any* proceeds from the sale of the property."  *Id.* ¶ 16.  Hence, Plaintiff seeks damages of $2,250,000.00.

3

Plaintiff's first count is for legal malpractice, alleging that Defendant failed to exercise the "degree of reasonable care and skill which is expected of attorneys conducting this type of secured transaction." *Id.* ¶ 21. Plaintiff asserts its claim as a third-party beneficiary of the mortgage agreement between Cambridge and the Borrowers. Plaintiff maintains that "[a] direct and intended beneficiary may maintain a malpractice cause of action" and thus "Defendant is liable to Footbridge as a direct and intended beneficiary of the Cambridge loan." *Id.* ¶¶ 24, 27. Plaintiff's second count is simply for negligence, alleging that "Defendant had a duty to represent the best interests of Cambridge and Footbridge." *Id.* ¶ 33. Defendant allegedly breached that duty by failing to exercise reasonable care under the circumstances, a standard of care that, under these circumstances, entailed "that degree of reasonable care and skill expected of lawyers acting under similar circumstances." *Id*. ¶ 31, 33.

On March 9, 2004, Defendant filed a Motion to Dismiss for failure to state a claim upon which relief can be granted. Upon consideration of each basis supporting Defendant's motion, in addition to the parties' arguments in subsequent filings, the Court denied Defendant's Motion to Dismiss. First, the Court held that Plaintiff did not exceed the statute of limitations for its legal malpractice claim. [26] Mem. Op. at 6-8. Rather, Plaintiff discovered Defendant's alleged malpractice within statutory limits, making the action timely. *Id.* Second, the Court found that Plaintiff's allegation of damages was sufficient at that stage of the litigation. *Id.* at 8-9. In granting Plaintiff all inferences that can be derived from its pleadings, the Court held that Defendant had not established "'beyond doubt'" that Plaintiff could not prevail on its damages claim. *Id.* at 9 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Third, finding it unnecessary that Plaintiff establish "'that Defendant consented to be

4

Plaintiff's attorney . . . or that there was a contractual retainer agreement between them,'" the

Court held that Plaintiff had alleged a sufficient attorney-client relationship.  *Id.* at 10 (quoting

Def.'s Mem. in Support of Mot. to Dismiss at 4).  Fourth, the Court was unable to find that

Plaintiff's intended beneficiary claim was insufficient as a matter of law.  *Id.* at 14.  Accordingly,

the Court held that determination of this issue required a factual inquiry not appropriate at the

motion to dismiss stage.  *Id.*  Finally, related to this claim, the Court held that Plaintiff's

pleadings support an inference that Defendant owed Plaintiff a duty of care.  *Id.*

Following the issuance of this Memorandum Opinion, Defendant filed a Motion for

Reconsideration of Motion to Dismiss or in the Alternative for Leave to File an Interlocutory

Appeal.  Declining to reconsider its original position, the Court determined that it did not err in

denying Defendant's Motion to Dismiss.  [31] Mem. Op. (May 2, 2005).  Additionally, the Court

found that it would be inappropriate to certify Defendant's request for an interlocutory appeal.

*Id*. at 12–13.

On July 15, 2005, Defendant filed the present [33] Motion for Summary Judgment, along

with thirteen exhibits purporting to be certified liens against property securing Plaintiff's

interests.  Defendant's sole ground for summary judgment is that there is no genuine issue of

material fact as to whether or not Plaintiff suffered $2,250,000 in damages as a "direc[t] and

proximat[e]" result of Defendant's actions.  Def.'s Mot. for Summ. J. at 4.  In supporting his

motion, Defendant separately relies upon both the facts alleged in Plaintiff's Complaint and the

facts contained in Defendant's thirteen attached exhibits as independent bases for summary

judgment.  *See id.* at 4, 6–7 (pointing to alleged deficiencies in Plaintiff's pleadings and putting

forth factual exhibits to support Defendant's claims).  According to Defendant, both establish

that prior to the closing of Plaintiff's loan through Cambridge to the Dwyers, thirteen liens held

priority over any subsequent security interest held against the Dwyers' property.  *Id.* at 5–6.

These liens allegedly total $21,429,256.50.  *Id.*  Defendant, therefore, asserts that these prior

liens held seniority over Plaintiff's security interest, exhausting the $6,200,000 that would

otherwise have been used to satisfy Plaintiff's security interest.  *Id.* at 6–7.

In its Response, filed on July 29, 2005, Plaintiff sets forth factual arguments supported by

an affidavit and three exhibits that allegedly demonstrate that but for Defendant's actions, an

amount in excess of $2,417,959.69 would have been available to satisfy Plaintiff's security

interest.  Pl.'s Resp. to Mot. for Summ. J. ¶ 19.  First, Plaintiff controverts that thirteen prior

liens existed that were senior to Plaintiff's security interest.  *Id.* ¶ 12.  Rather, Plaintiff's security

interest allegedly represented only the third mortgage against the Dwyers' property.  *Id.* ¶ 13.

Second, Plaintiff asserts that the holder of the second mortgage against the Dwyers' property,

National Penn Bank ("National Penn"), was owed $1,950,000.00 plus interest and attorney's fees

out of the Dwyers' bankruptcy.  *Id.* ¶ 18.  Plaintiff, on the other hand, only recovered

$467,959.69 out the bankruptcy proceedings.  *Id.* ¶ 14.  Therefore, given that Plaintiff's loan was

made on or about November 30, 2000 (well *before* National Penn's security interest was filed on

June 26, 2001), but Defendant actually filed Plaintiff's security interest nearly seven months later

on July 5, 2001 (*after* National Penn's security interest was filed), National Penn allegedly held

priority over Plaintiff in line for recovery from the Dwyer's bankruptcy proceedings–leaving a

sum insufficient to satisfy Plaintiff's security interest–as a result of Defendant's dilatory filing.

*Id.* ¶ 19.

6

Defendant's Reply, filed on August 6, 2005, essentially seeks to undermine the factual assertions made in Plaintiff's Response to Defendant's Motion for Summary Judgment. First, Defendant attacks the admissibility of the evidence upon which Plaintiff relies in making its factual arguments. *See* Def.'s Reply at 1, 3, 8-9 (asserting that Plaintiff's support for its Response employs evidence that is inadmissible, insofar as it uses testimony from persons lacking personal knowledge and documents that are not properly certified). Since Plaintiff relies on evidence that is allegedly inadmissible, Defendant argues that this evidence cannot be used to create a genuine issue of material fact for trial. *Id.* at 1–2. Second, Defendant asserts that the National Penn mortgage that took priority over Plaintiff's security interest was actually filed prior to the closing date of Plaintiff's loan through Cambridge to the Dwyers. *Id.* at 5–8. In support of this assertion, Defendant draws attention to Plaintiff's exhibits, identifying a portion that allegedly demonstrates that the later National Penn mortgage referred to in Plaintiff's pleadings was voided as a fraudulent conveyance. *Id.* at 7. Therefore, according to the Defendant, the Court ought to disregard Plaintiff's factual assertions and rule as a matter of law that Plaintiff cannot establish Defendant caused it any harm.

On August 17, 2005, Plaintiff filed a [37] Response to Defendant's Reply, addressing the factual and legal assertions raised in Defendant's Reply. With regard to the issues relating to the admissibility of evidence, Plaintiff points to portions of the documentation it provides to controvert Defendant's evidentiary assertions. *See, e.g.*, Pl.'s Resp. to Reply ¶¶ 20–26 (addressing evidentiary issues raised by employing public records as evidence). Similarly, Plaintiff addresses Defendant's fraudulent conveyance argument in a similar

fashion—identifying portions of its own documentation that allegedly controvert Defendant's contentions.  *Id.* at ¶¶ 30–34.

On August 29, 2005, Defendant filed an Objection to Plaintiff's Response to Defendant's Reply.  Defendant objects to Plaintiff's filing of a surreply insofar as the Local Rules do not contemplate such a filing.  Def.'s Objection to Resp. to Reply at 1.  Beyond this objection, however, Defendant reiterates many of the arguments he raised in his Reply.

## II.  LEGAL STANDARD

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Under the summary judgment standard, Defendant, as the moving party, bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Plaintiff, in response to Defendants' motion, must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202  (1986).  To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251, 106 S. Ct. 2505 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50, 106 S.Ct. 2505 (internal citations omitted).  "Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment."  *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).  The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587, 106 S. Ct. 1348 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).  Such genuine issues arise from conflicts manifested in "[c]redibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts." *See Anderson*, 477 U.S. at 255 (regarding such issues to be solely for determination by the finder of facts).

## III.  DISCUSSION

The Court shall consider Defendant's Motion for Summary Judgment based on the burden-shifting analysis contemplated by the United States Supreme Court in *Celotex*, as iterated in Section II of this Memorandum Opinion.  Accordingly, the Court will first assess whether Defendant has fulfilled his "initial responsibility" to demonstrate to the Court that there is no "genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548.  Next, the Court will analyze Plaintiff's response and determine if Plaintiff has adequately identified "specific facts showing that there is a genuine issue for trial." *Id.* at 324.  Finally, the Court will address each of the arguments that Defendant makes to controvert Plaintiff's demonstration of a "genuine issue of material fact." *Id.* at 323.

> A.      *Defendant's Initial Burden to Demonstrate the Absence of a Genuine Issue of Material Fact*

The sole ground for summary judgment raised in Defendant's Motion concerns Plaintiff's ability to establish the existence of damages resulting from Defendant's alleged failure to timely record Plaintiff's mortgage lien against the Dwyers.  *Compare LaBracio Family P'ship v. 1239 Roosevelt Ave., Inc.*, 773 A.2d 1209, 1214–15 (N.J. Super. Ct. App. Div. 2001) (finding a "sufficient basis" to establish the causation of damages where an attorney failed to file a purchase money mortgage, allowing other interests to take priority over the plaintiff's interest), *and Am. Acceptance Corp. v. Elmer G. Gibbons, III, Inc.*, 704 F. Supp. 684, 690 (E.D. La. 1988) ("Thus

had [Defendant, attorney] properly recorded the collateral chattel mortgage . . . [the] security

device would have primed ITT's subsequently recorded collateral chattel mortgage."), *with*

*Cramer v. Spada*, 203 A.D.2d 739, 741 (N.Y. App. Div. 1994) (affirming judgment in favor of a

defendant where plaintiff failed to prove damages given that plaintiff "would not have shared in

the distribution of the proceeds of the sale of . . . assets because they were totally consumed in

satisfying liens that had priority over his").

     Generally speaking, the mortgage instruments at the focus of this litigation are a form of

security interest that can be used for the eventual repayment of a debt. *See Chem. Bank New*

*Jersey, N.A. v. City of Absecon*, 13 N.J. Tax 1, 8 (N.J. Tax Ct. 1992).[1]  In New Jersey, this

security interest (a mortgage) is constituted by a fee simple estate held in the property by the

holder of the security interest, whereas the debtor still maintains possession of the property. *Id*.

("In New Jersey, the common law rule is that a mortgage creates an immediate estate in fee

simple in the mortgagee subject to defeasance by the payment of the mortgage debt according to

the terms of the mortgage.  However, the right to possession is postponed until default. *Boteler*

*v. LeBer* 112 *N.J.Eq.* 441, 164 *A.* 572 (Ch. 1993).  The attitude of our courts is that, while in law

a mortgage conveys a legal title to the property encumbered, *Jaffe v. Zilinski,* 14 *N.J.* 24, 29, 100

*A.*2d 887 (1953), in equity a lien on the land is created by a mortgage. *Rosenblatt v. Premier*

---

[1] The legal principles informing the Court's understanding of the property transactions at issue in this case will be based upon the state law where these land transactions took place.  *See Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 378–79, 97 S. Ct. 582, 50 L. Ed. 2d 550 (1977) ("Under our federal system, property ownership is not governed by a general federal law, but rather by the laws of the several States. . . . This is particularly true with respect to real property, for even when federal common law was in its heyday under the teachings of *Swift v. Tyson*, 16 Pet. 1, 10 L. Ed. 865 (1842), an exception was carved out for the local law of real property."); *Davies Warehouse Co. v. Bowles*, 321 U.S. 144, 155, 64 S. Ct. 474, 88 L. Ed. 635 (1944) ("The great body of law in this country which controls acquisition, transmission, and transfer of property, and defines the rights of its owners in relation to the state or to private parties, is found in the statutes and decisions of the state.").

*Dyeing Co.,* 101 *N.J.Eq.* 569, 139 *A.* 389 (Ch.1927).").  The estate is then subject to defeasance

following the payment of the debt according to terms established in the mortgage agreement.  *Id.*

While property, such as that once owned by the Dwyers, can be subject to a plurality of interests

securing debt, the priority for payment is based upon timing.  *See LaBracio Family P'ship*, 773

A.2d at 1211 (discussing New Jersey's "race notice" statute for the recording of liens).  In New

Jersey, security interests recorded earlier in time are given priority over instruments filed later.

*Id.*; *see also* N.J. Stat. Ann. § 46:22-1 (declaring that unrecorded deeds and instruments shall be

"void and of no effect against subsequent judgment creditors . . . whose mortgage shall have been

first duly recorded . . . .").  However, where senior liens are satisfied through fulfillment of

conditions in the mortgage, or otherwise released, the junior lien-holder is elevated in priority for

payment.  *See Di Giovacchini v. Teich*, 30 A.2d 815, 818 (N.J. Ch. 1943) ("[I]f a bond and

mortgage are paid by the tenant of the equity of redemption, the efficacy of these instruments is

discharged as to all subsequent encumbrances."); *cf. Collins v. Tweedale*, 76 F.2d 63, 64 (3rd Cir.

1935) (interpreting New Jersey common law and stating that "if the debt secured by the mortgage

is paid, the connection of the mortgagee with the land ceases . . . ."); *see also* 59 C.J.S.

Mortgages § 258 (2006) ("Ordinarily, a release of a mortgage or deed of trust on the record

inures to the benefit of a junior lienor or holder of an interest acquired subsequent to the

execution of the mortgage or deed of trust."); *Ready v. Ready*, 20 N.E.2d 636, 640 (Ill. App. Ct.

1939) (finding the status of junior lien holders to be elevated following the release of a senior

lien).

     In attempting to negate this element of Plaintiff's case, Defendant relies first upon his

allegation that "Plaintiff's Complaint does not support the legal conclusion that Defendant's

alleged legal malpractice and negligence" caused Plaintiff's damages.  Def.'s Mot. for Summ. J.
at 5.  According to Defendant, his conduct could not have caused Plaintiff any damages since
liens, senior to Plaintiff's mortgage, exhausted any possible recovery.  *Id.*  However, Defendant
cannot and does not, in his Motion for Summary Judgment, demonstrate that there is no genuine
issue of material fact as to whether $21,429,256.50 in liens took priority over Plaintiff's security
interest.

Defendant proffers supposedly "concrete evidence" allegedly establishing the existence of
$21,429,256.50 in liens, which allegedly took priority over Plaintiff's security interest before
November 30, 2000.  Def.'s Mot. for Summ. J. at 5–7.  Essentially, Defendant has compiled
thirteen certified copies of documents alleged to be mortgage liens, each of which is dated prior
to November 30, 2000.  *Id.* at Exs. 1–13.  Examination of these documents reveals that their face
value totals $21,429,256.50.  *See id.* at Exs. 1–13 (containing certified copies of these
documents, each with a value that corresponds to a debt at the time the document was executed).
Defendant then alleges that this is the total value of encumbrances superior to Plaintiff's security
interest.  *Id.* at 5.  Since this value exceeds the total pay-out from the Dwyers' bankruptcy
property sales, which would have otherwise been used to satisfy Plaintiff's security interest,
Defendant argues that his conduct could not have caused Plaintiff to incur damages.  *Id.* at 7.

With respect to the principles of secured transactions at issue in this case, and upon
examination of the thirteen documents attached to Defendant's motion, it is not at all clear that
the evidence Defendant proffers eliminates a genuine issue of material fact.  First, at least one of
the documents does not appear to actually be a mortgage against the Dwyers.  *See* Def.'s Mot. for

Summ. J. at Ex. 3 (providing notice of a "potential construction lien against" James Dwyer and d/b/a James M. Dwyer, Real Estate & Development).  Second, at least three of the attached documents do not list any entity associated with the Dwyers as a mortgagor.  *See id.* at Exs. 1, 2, 12 (providing mortgages in property possessed, respectively, by the Ann-Norword Corporation; William F. Mcguire, Jr. and Lois G. Mcguire; and JMD, Reid, VJX, Inc.).  Third, at least two of the documents provide indications that they have been satisfied through payment.  *See id.* at Exhibits 2, 5 (containing stamps indicating that the liens associated with the mortgage agreement have been satisfied by a financial institution).  Fourth, at least three of the documents indicate that the liens they represent are the first or second mortgages against an entity associated with the Dwyers; thus indicating that earlier liens lack priority.  *See id.* at Exs. 4, 10, 11 (representing that the liens contained in the respective mortgage agreements are a first, first, and second mortgage against property connected to the Dwyers).  Finally, as a key general matter, the property descriptions in these documents are different from one another and cannot be determined to be necessarily associated with the properties securing Plaintiff's interests therein.  *Compare id.* at Ex. 6 (referring to Ocean City, New Jersey tax block 1001), *with id.* at Ex. 8 (referring to Ocean City, New Jersey tax block 1101), *and* Pl.'s Compl. at Ex. 2 (referring to Ocean City, New Jersey tax block 1101).  Close examination of these documents certainly calls into question the assertion that *all* thirteen certified copies represent senior liens to the Plaintiff's security interest.  There is no factual context provided to explain these documents.  Therefore, examining these documents in their totality demonstrates an inconsistency that forecloses a simple summation of the face value on these instruments.

14

With regard to the evidence Defendant presents in support of his motion for summary judgment, there is simply no way to tell if these supposedly senior liens have actually exhausted the funds that would have been used to satisfy Plaintiff's security interest. In this respect, it is not apparent from Defendant's filings that he has satisfied his "initial responsibility" to demonstrate the lack of a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548. Nonetheless, the Court will go on to examine Plaintiff's filings with respect to establishing the existence of a genuine factual dispute.

B.      *Plaintiff's Burden in Response*

In attempting to demonstrate the existence of a genuine issue with regard to causation of damages, Plaintiff relies upon the affidavit of Jason Libby, Portfolio Manager for Plaintiff, and upon three exhibits. Plaintiff denies that there are $21,429,256.50 in liens on the Dwyers' property with priority over the Cambridge security interest. Pl.'s Resp. to Mot. for Summ. J. ¶ 12 (stating that this fact is "controverted"); *see also* Aff. in Supp. of Pl.'s Resp. to Mot. for Summ. J. ¶ 3. Plaintiff's Response allegedly demonstrates that Plaintiff's security interest was only third in priority for payment of debt connected to the Dwyers' property. Pl.'s Resp. to Mot. for Summ. J. ¶ 13; Aff. in Supp. of Pl.'s Resp. to Mot. for Summ. J. ¶ 4. Moreover, the evidence allegedly shows that the second priority lien-holder against the Dwyers' property, National Penn, which filed after November 2000 but before Plaintiff's lien was actually recorded, was owed $1,950,000.00 from the sale of that property. Pl.'s Resp. to Mot. for Summ. J. ¶¶ 16–18; Aff. in Supp. of Pl.'s Resp. to Mot. for Summ. J. ¶¶ 11–13. According to Plaintiff, that sum, in conjunction with what Plaintiff was able to recover out of the Dwyers' bankruptcy proceedings,

would have provided "in excess of $2,417,959.69" to satisfy Plaintiff's security interest. Pl.'s Resp. to Mot. for Summ. J. ¶ 19; Aff. in Supp. of Pl.'s Resp. to Mot. for Summ. J. ¶ 14.  Instead, Plaintiff only recovered $467,959.69. Pl.'s Resp. to Mot. for Summ. J. ¶ 14; Aff. in Supp. of Pl.'s Resp. to Mot. for Summ. J. ¶ 5.  Therefore, Plaintiff alleges that but for Defendant's untimely filing of its mortgage in the Dwyers' property, which otherwise would have made Plaintiff the second, rather than third, priority lien-holder, Plaintiff would have recovered its security interest out of the Dwyers' bankruptcy. Pl.'s Resp. to Mot. for Summ. J. ¶ 20; Aff. in Supp. of Pl.'s Resp. to Mot. for Summ. J. ¶ 15.

Plaintiffs' exhibits allegedly further substantiate Plaintiff's factual claims.  First, Plaintiff provides a copy of National Penn's proof of claim against the Dwyers.  Pl.'s Resp. to Mot. for Summ. J. at Ex. 1.  This document provides evidence that National Penn held a secured claim in the form of a mortgage against the Dwyers for $1,950,000.00 based on a mortgage lien perfected on June 26, 2001.  *Id.*  The land attached to this National Penn's security interest is the same property securing Plaintiff's interest.  *See id.* (referring to Ocean City, New Jersey tax block 1101).  Second, Plaintiff provides a Consent Judgment and a Consent Order issued by the United States Bankruptcy Court for the District of New Jersey involving the claims of Cambridge—the entity through which Plaintiff created a security interest in the Dwyers' property.  *Id.* at Exs. 2, 3. These documents provide evidence that Cambridge held the "third mortgage lien" against the Dwyers' behind National Penn, holder of the "second mortgage lien"; that disbursement of funds to National Penn from the sale of the Dwyers' property paid off their "claim"; and that following this disbursement, the remaining balance of the sale proceeds from the Dwyers' property, $467,959.69, was to be paid to Cambridge.

16

Plaintiff's evidence specifically controverts the factual allegations made in the Defendant's motion; thus it creates a genuine issue of material fact.  First, insofar as Plaintiff proffers facts that, if accepted as true, would tend to advance Plaintiff's claims regarding the causation of damages, Plaintiff's factual assertions are capable of affecting the substantive outcome of this litigation.  Thus, Plaintiff has proffered *material* facts.  Second, Plaintiff's factual assertions are supported by the affidavit of an individual who presumably has knowledge of the operations of Plaintiff's investments.  *See* Aff. in Supp. of Pl.'s Resp. to Mot. for Summ. J. ¶ 2 (swearing to be the portfolio manager of Footbridge Limited Trust).  The factual assertions are further supported by exhibits from a bankruptcy court that has apparently documented the priority of claims made against the Dwyers.  This evidence goes beyond demonstrating a mere "metaphysical doubt as to the material facts," *Matsushita Elec. Indus.*, 475 U.S. at 586, 106 S. Ct. 1348, and is "sufficiently probative" in advancing Plaintiff's claims, *Liberty Lobby*, 477 U.S. at 249–50, 106 S. Ct. 2505.  Therefore, with respect to the arguments respectively advanced by Defendant and Plaintiff in their Motion for Summary Judgment and Response thereto, the Court finds that a genuine issue of material fact exists with respect to causation of damages.  Fed. R. Civ. P. 56(c).  Thus, Defendant is not entitled to judgment as a matter of law.

C.     *Defendant's Arguments Against Plaintiff's Response*

Defendant argues that much of the evidence Plaintiff relies on is inadmissible, foreclosing the Court from relying upon it in order to create a genuine issue of material fact.  All of Plaintiff's evidence, however, can be properly relied upon in its current form to create a genuine factual issue for trial.  While it is true that a party opposing summary judgment may not merely

rest upon her pleadings, and rather must "designate 'specific facts showing that there is a genuine issue for trial,'" the party opposing summary judgment need not "produce evidence in a form that would be admissible at trial." *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred."). Rather, the non-moving party must produce evidence "that is capable of being converted into admissible evidence." *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000) (forbidding hearsay evidence from "count[ing]" towards the creation of a genuine issue of material fact, stating that "[v]erdicts cannot rest on inadmissible evidence," but noting that "a nonmovant is not required to produce evidence in a *form* that would be admissible at trial . . . ."). An examination of Plaintiff's proffered evidence suggests that it certainly could be rendered admissible for trial.

With regard to Plaintiff's proffered affidavit, the testimony rendered therein would be admissible since it is based on personal knowledge. Contrary to Defendant's assertions, Plaintiff's affiant states that his "statements are true and correct to the best of [his] knowledge" and that he is "competent to testify as to the statements made herein from personal knowledge." Federal Rule of Evidence 602, addressing the requirement of personal knowledge, requires no more. *See* Fed. R. Evid. 602 ("Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony."). Plaintiff's supporting exhibits are not problematic either. Even though Defendant may be correct that the bankruptcy notice of claim, consent judgment,

18

and consent order are not currently admissible, *see* Fed. R. Evid. 902(2) (requiring unsealed public documents to be certified before being self-authenticated), it is certainly reasonable to assume that these documents could be certified and prepared for admissibility at trial.  Therefore, the evidence Plaintiff submits to the court can be properly relied upon to establish a genuine issue of material fact for trial.

Second, Defendant asserts that the National Penn mortgage that was filed on June 26, 2001, that Plaintiff refers to in its response briefing was an invalid fraudulent conveyance and not the mortgage under which National Penn obtained monetary compensation from the Dwyers' bankruptcy.  Def.'s Reply to Resp. to Mot. for Summ. J. at 6–7.  According to Defendant, a *different* National Penn mortgage that was filed on February 1, 2000 (prior to the creation of Plaintiff's security interest) actually holds priority over Plaintiff's security interest.  *Id.* at 7–8.  Therefore, Defendant's alleged misconduct would not have resulted in National Penn's earlier, February 1, 2000 mortgage taking priority over the Plaintiff's security interest since Plaintiff's security interest was not created until November 30, 2000.

Defendant is correct that Plaintiff's exhibits do indicate that the National Penn mortgage filed on June 26, 2001 was voided by the Dwyers' bankruptcy trustee as a fraudulent conveyance pursuant to 11 U.S.C. § 548.  *See* Pl.'s Resp. to Mot. for Summ. J. at Ex. 2 (" . . . and it appearing that National Penn Bank held a second mortgage lien against the [Dwyer's property], which lien was voided as a fraudulent conveyance . . . ."); *see also, e.g.*, 11 U.S.C. § 548 ("The trustee may avoid any transfer . . . incurred by the debtor, . . . if the debtor voluntarily or involuntarily . . . was engaged in business or a transaction . . . for which any property remaining

with the debtor was an unreasonably small capital.").  However, Plaintiff is also correct to point

out that the same bankruptcy document indicates that National Penn's mortgage was "preserved

for the benefit of the estate pursuant to 11 U.S.C. § 551."  Pl.'s Resp. to Mot. for Summ. J. at Ex.

2; *see also* 11 U.S.C. § 5151 ("Any transfer avoided under section . . . 548 . . . of this title . . . is

preserved for the benefit of the estate but only with respect to property of the estate.").

Accordingly, bankruptcy courts have held that the procedure of avoidance followed by

preservation for the estate's benefit does not affect the priority of a lien's enforceability against

property held in trust.  *See In re Bethea*, 275 B.R. 127, 129 (Bankr. D.D.C. 2002) (holding that a

preserved avoided lien is still enforceable against property held by an estate, stating that "the

trustee's avoidance of the lien only results in a simultaneous change in ownership of the lien, not

a freeing of the property from the lien."); *see also In re Applachian Energy Indus., Inc.*, 25 B.R.

515, 517 (Bankr. M.D.Tenn. 1982) (holding that 11 U.S.C. § 551's preservation provision

preserves the priority of an avoided lien).  Therefore, the Court rejects Defendant's argument that

National Penn's mortgage filed on June 26, 2001 is entirely invalid against the Dwyers' property.

It is less clear, from the documentation provided by the parties, what role–if any–National Penn's

February 1, 2000 mortgage (provided by Defendant in his Motion for Summary Judgment as

Exhibit 11) played in National Penn's overall recovery from the bankruptcy proceedings.

Plaintiff, in its Response to Defendant's Reply, attaches a document equating Defendants'

proceedings with a National Penn lien in the amount of $1,950,000.00–the amount of National

Penn's June 26, 2001 mortgage.  *See* Pl.'s Resp. to Reply, Ex. 1 (Chapter 7 Information for

Notice of Settlement of Controversy).  At minimum, the Court cannot discern from the evidence

provided that the June 26, 2001 mortgage was *not* the basis for National Penn's recovery.

Defendant also argues that the Court should disregard Plaintiff's Response to Reply in Response to Motion for Summary Judgment, wherein Plaintiff responds to the new arguments Defendant advances against Plaintiff's Response to Motion for Summary Judgment.  Def.'s Obj. to Resp. to Reply to Resp. to Mot. for Summ. J. at 1–2.  According to Defendant, since the Local Rules of the United States District Court for the District of Columbia do not contemplate the filing of a surreply, the Court should disregard this filing in the absence of express permission from this Court.  *See* LCvR 7 (making no mention of a surreply or the filing of responses to reply filings).  While it is true that the Court typically must give permission for the filing of surreplies, the Court will not heed Defendant's request that the Court completely disregard Plaintiff's Response to Reply in Response to Motion for Summary Judgment.  Defendant's Reply to Response to Motion for Summary Judgment raised new issues dealing with evidence and the substantive law of secured transactions.  While the Court admonishes Plaintiff for not seeking permission in filing its Response to Reply in Response to Motion for Summary Judgment, the Court nonetheless will consider Plaintiff's briefing on new issues raised by Defendant in his Reply, as Defendant improperly raised new arguments in his Reply brief.

Finally, Defendant claims that Plaintiff's affiant's statements regarding National Penn's lien priority were presented to the Court in "bad faith."  Def.'s Reply to Resp. to Mot. for Summ. J. at 8.  "Therefore, this Honorable Court should impose Rule 56(g) sanctions on Plaintiff and its counsel."  *Id.*; *see* Fed. R. Civ. P. 56(g) (providing that the Court may issue sanctions at any time should it become apparent that "affidavits presented pursuant to [Fed. R. Civ. P. 56] are presented in bad faith").  The Court finds no basis on which to sanction Plaintiff.

For the aforementioned reasons, the Court shall not disregard Plaintiff's factual assertions despite Defendant's protestations.  Therefore, the Court finds that Defendant has failed to establish that no genuine issue of material fact exists with regard to the causation of Plaintiff's damages.

## IV.  CONCLUSION

For the reasons set forth above, the Court shall DENY Defendant's [33] Motion for Summary Judgment.  The Parties shall jointly file a Rule 16.3 Report by January 12, 2007.  The Parties shall appear before the Court for an Initial Scheduling Conference on January 18, 2007, at 11:00 a.m.  Furthermore, the Court notes that the instant Motion represents the third round of briefing prior to any discovery in the instant case.  As it is clear to the Court that factual issues remain which require discovery for their resolution, no further dispositive motions shall be filed unless and until the Court sets out a briefing schedule.  An appropriate Order accompanies this Memorandum Opinion.


Date:   December 15, 2006


                            _____/s/_____
                            COLLEEN KOLLAR-KOTELLY
                            United States District Judge

22