UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FOOTBRIDGE LIMITED TRUST,<br><br>    Plaintiff,<br><br>    v.<br><br>JAMES ZHANG,<br><br>    Defendant. | Civil Action No. 04-347 (CKK) |

**MEMORANDUM OPINION**
(November 5, 2008)

Plaintiff Footbridge Limited Trust ("Footbridge") has filed the instant malpractice and negligence action against James Zhang ("Zhang"), an attorney who is proceeding *pro se*. Footbridge loaned $1.5 Million to certain non-party borrowers through Cambridge Holdings Group, Inc. ("Cambridge"), a non-party that employed Zhang as an attorney. Footbridge alleges that its loan was supposed to have been secured by mortgages on two pieces of real property located in Pennsylvania and New Jersey, respectively, but that its security interests were not perfected (i.e. the mortgage was not recorded) on the New Jersey property until approximately seven months after the closing of the loan transaction.[1] During this seven month period, National Penn Bank (also a non-party) recorded a mortgage as to which a security interest in the New Jersey property was pledged. After the borrowers defaulted on their loan and filed for bankruptcy, Footbridge attempted to foreclose on its security interests. Because National Penn Bank had a priority interest by virtue of its earlier recorded mortgage, Footbridge alleges that it

---

[1] The parties provide no explanation as to whether or when the mortgage was recorded on the Pennsylvania property and neither identifies it as an issue in this litigation.

received only $467,959 from the sale of the properties instead of the $2.25 Million it would have received had its security interests been perfected immediately following the closing of the loan transaction.

Footbridge blames Zhang for the seven-month lapse between the closing of the loan transaction and the perfection of Footbridge's security interests. Zhang, in turn, maintains that he bears no responsibility for the events described above. He denies having attended the loan closing or having any knowledge of the loan transaction between Cambridge and the borrowers, and asserts that he never had possession of the mortgage documents at issue. Zhang also denies owing any legal obligation to Footbridge.

Currently pending before the Court are the parties' Cross-Motions for Summary Judgment and two motions filed by Zhang relating to Footbridge's submissions to the Court – (1) Defendant's Motion to Strike a Portion of Plaintiff's Affidavit in Support of its Motion for Summary Judgment and (2) Defendant's Motion to Strike a Portion of Plaintiff's Response to Defendant's Statement of Undisputed Material Facts. Footbridge did not oppose either Motion to Strike. After thoroughly reviewing all of the parties' submissions, including the attachments thereto, applicable case law, statutory authority, and the record of the case as a whole, the Court shall GRANT Defendant's [102, 104] Motions to Strike, shall GRANT Defendant's [95] Motion for Summary Judgment, and shall DENY Plaintiff's [96] Motion for Summary Judgment, for the reasons that follow.

## I.  BACKGROUND

As a preliminary matter, the Court shall address Footbridge's inexplicable failure to comply with Local Civil Rule 7(h)(1), which sets forth the requirements that parties must follow

when filing or opposing a motion for summary judgment:

> [e]ach motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement. An opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement . . . In determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

LCvR 7(h)(1). The Court has repeatedly instructed the parties to comply with this local rule. *See, e.g.*, [4] Order at 1 (Mar. 16, 2004) (requiring the parties "to comply fully with [] LCvR 7(h)," and advising the parties that "[t]he Court assumes facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion"); [46] Order at 4-5 (Jan. 18, 2007) (instructing the parties to "comply fully with [] LCvR 7(h)," which requires the parties to "furnish precise citations to the portions of the record on which they rely"). When the Court set the briefing schedule for the parties' cross-motions for summary judgment, it again advised the parties to comply with this local rule. *See* [93] Order at 1-2 (Feb. 20, 2008) (instructing the parties to "comply fully with [] LCvR 7(h)," and repeating that "[a]t all points, parties must furnish precise citations to the portions of the record on which they rely").

Footbridge ignored Local Civil Rule 7(h) and the Court's Orders relating to the same in at least four ways. First, Footbridge's Statement of Material Facts contains several facts that lack *any* citation to record evidence, a clear requirement of Local Civil Rule 7(h). *See, e.g.*, Pl.'s Stmt. ¶¶ 11, 14, 17, 18. Second, where Footbridge *does* include a citation to record evidence, it

fails to furnish "precise" citations to the record and instead relies on references to entire documents – including one that is over forty pages in length. *Id.* ¶¶ 5, 12, 21 (11/30/00 Mortgage and Security Agreement). Third, Footbridge failed to file *any* response to Zhang's Statement of Material Facts even though the Court advised the parties that it would "assume[] facts identified by the moving party in its statement of material facts are admitted" unless controverted. [4] Order at 1 (Mar. 16, 2004). The Court nevertheless allowed Footbridge to file a response by issuing yet another Order directing Footbridge to comply with Local Civil Rule 7(h). *See* Min. Order dated Aug. 27, 2008. Although Footbridge complied with this instruction, it again violated Local Civil Rule 7(h) by objecting to two of Zhang's proffered facts without citing to *any* record evidence. Pl.'s Resp. Stmt. ¶¶ 15, 16.

Footbridge's fourth violation led Zhang to file a Motion to Strike paragraphs 15 and 16 of Footbridge's Response for lack of any citations to record evidence. *See* [104] Def.'s Mot. to Strike at 1. Footbridge did not file an Opposition. The Court shall therefore grant the Motion to Strike as conceded, *see* Local Civil Rule 7(b) (authorizing a court to treat an unopposed motion as conceded), and as appropriate on the merits, and shall strike paragraphs 15 and 16 of Footbridge's Response to Zhang's Statement of Material Facts. To survive a motion for summary judgment, moreover, a party's claims must rely on evidence and not bare allegations. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the burden to identify such evidence should fall on the parties, in response to Footbridge's failure to identify the same, the Court has undertaken its own independent review of the record and shall disregard all proffered facts contained in Footbridge's Statement of Material Facts (and reflected in its summary judgment briefs) that are not properly supported by record evidence.

*A. Factual Background*

On November 30, 2000, Footbridge executed a Participation Agreement with Cambridge as part of a $1.5 Million loan to James M. Dwyer Real Estate Equities International; JMD, VJ Locust, LLC; Dwyer VJ-Locust, L.P.; James M. Dwyer, individually; and Margart A. Dwyer, individually (the "Borrowers").[2]  Pl.'s Stmt. ¶ 1.  Pursuant to the Participation Agreement, the $1.5 Million loan was to be secured by two real properties located in Pennsylvania and New Jersey, respectively.  *Id.* ¶ 3.  The Participation Agreement also required Cambridge "to maintain books to account for the loan, and, without limitation, provide all services necessary and reasonable to administer and collect sums due under the loan and monitor the status of the collateral for the sole and exclusive benefit and use of [Footbridge]."  *Id.* ¶ 4.

At the loan closing, the Borrowers signed a Mortgage and Security Agreement that pledged a security interest in the properties.  Pl.'s Stmt. ¶ 12.  The first page of the agreement contained the following typed statement in the upper right-hand corner:

> After recording, please return to:
> James Zhang, Esq.
> Cambridge Capital Group, Inc.
> 5335 Wisconsin Avenue, NW, Suite 440
> Washington, DC 20015

*Id.* at 1.  The mortgage on the New Jersey property was recorded approximately seven months

---

[2] Zhang objects to this and other facts proffered by Footbridge on the grounds that the Participation Agreement and other exhibits are inadmissible because they have not been properly authenticated.  *See, e.g.*, Def.'s Resp. Stmt. ¶ 1.  As the Court explained in a prior Memorandum Opinion in this case, "it is certainly reasonable to assume that these documents could be certified and prepared for admissibility at trial."  [43] Mem. Op. at 18-19 (Dec. 15, 2006).  Although the Court would ordinarily instruct that Zhang could raise the objections at a subsequent point, the disposition of the parties' cross-motions obviates the need for Zhang to do so.

after the closing on July 5, 2001.[3]  Pl.'s Stmt. ¶ 15; Def.'s Resp. Stmt. ¶ 15.  Footbridge alleges that this delay caused them to suffer financial damages when the Borrowers filed for bankruptcy.[4]  *See* Pl.'s Stmt. ¶¶ 16-20.

It is undisputed that Zhang was employed as an attorney for Cambridge in 2000, during which he performed work on commercial loan transactions.  Pl.'s Stmt. ¶ 7; Def.'s Resp. Stmt. ¶ 7.  Zhang denies having any knowledge of this particular loan transaction, Def.'s Stmt. ¶ 4, and denies having drafted or reviewed the Participation Agreement, *id.* ¶ 1.  During his deposition, Zhang testified that he had visited Pennsylvania (the site of the loan closing) only twice, once for skiing and another time to visit a forest.  Def.'s Opp'n, Ex. 1 at 101:1 - 101:14 (Depo. Tr. of J. Zhang).  Zhang could not recall ever having attended a closing besides the closing on his own home.  *Id.* at 103:16 - 103:18 ("Q: Have you ever attended a closing, other than buying your own house?  A: Not to my recollection").

Despite Zhang's protestations to the contrary, Footbridge proffers four facts concerning Zhang's alleged role in the loan transaction described above.  First, Footbridge alleges that the loan closing occurred on November 30, 2000, in Philadelphia, Pennsylvania, with "Zhang in attendance and representing the interests of Cambridge."  Pl.'s Stmt. ¶ 9.  Second, Footbridge alleges that Zhang "instructed Lawyers Title Insurance Company that the New Jersey Properties

---

[3] Footbridge does not indicate who eventually recorded the mortgage. Pl.'s Mot. for Summ. J., Ex. 1 ¶ 7 (Affidavit of J. Howe) ("The Deeds of Trust by which Plaintiff became secured were recorded on July 5, 2001").  Footbridge similarly provides no explanation as to whether it was returned to James Zhang after recording.

[4] These allegations are largely unsupported by record evidence, but the specific allegations concerning damages are, in any event, irrelevant given the disposition of the parties' cross-motions.

were not to be insured with title insurance." *Id.* ¶ 10. Third, Footbridge alleges that "[s]ince title insurance was not obtained for the New Jersey property, it was understood by the title insurance company that Mr. Zhang would attend to the recording of the New Jersey mortgage." *Id.* ¶ 11. Fourth, Footbridge alleges that Zhang "took possession of the Deeds of Trust [referring to the mortgages] which were to be filed in New Jersey." *Id.* ¶ 14.

The Court pauses at this point to discuss whether any of these four facts are supported by evidence in the record. With respect to the third and fourth facts proffered above, they may be summarily disregarded because Footbridge cites no evidence in the record to support them.[5] *See* Pl.'s Stmt. ¶¶ 9,10. As explained above, at the Motion for Summary Judgment stage, Footbridge must rely on evidence, not allegations, to create genuine issues of material fact. Without any evidentiary support, the Court shall disregard these two facts for purposes of the parties' cross-motions for summary judgment.

The analysis with respect to the Footbridge's first and second proffered facts is slightly different because both are "supported" by reference to an affidavit submitted by John Howe, the managing director of Footbridge Limited Trust. *See* Pl.'s Mot. for Summ. J., Ex. A ¶¶ 2, 8, 10. In his affidavit, Mr. Howe states that Zhang attended the closing and that Zhang "refused the issuance of a lender's title insurance policy on the property by which Plaintiff was to be secured." *Id.* ¶¶ 8, 10. Mr. Howe does *not* state, however, that he attended the loan closing, nor does he give any indication as to how he has personal knowledge of these facts. The affidavit is silent as to his basis of knowledge.

---

[5] The Court could glean no support for these facts upon its own independent review of the record.

Federal Rule of Civil Procedure 56(e)(1) requires that an affidavit "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Zhang filed a Motion to Strike certain of Mr. Howe's statements in his affidavit based on the lack of facts explaining the basis of his personal knowledge, including the statements supporting the first and second facts proffered by Footbridge above. *See* Pl.'s [102] Mot. to Strike at 1. Footbridge did not oppose Zhang's Motion to Strike, even though Footbridge could have alleviated any perceived lack of personal knowledge by simply having Mr. Howe explain the basis of his knowledge. Footbridge could have otherwise submitted (for purposes of supporting its claims on summary judgment) an affidavit or declaration from an individual who attended the loan closing and who could have attested to Zhang's attendance, as well as Zhang's alleged issuance of instructions relating to title insurance. Footbridge pursued none of these courses of action.

Given the lack of factual support demonstrating the basis for Mr. Howe's personal knowledge and Footbridge's concession that he lacks such knowledge by virtue of its failure to oppose Zhang's Motion to Strike on those grounds, *see* Local Civil Rule 7(b), the Court shall grant Zhang's Motion to Strike as conceded and on the merits, and shall disregard the factual statements made by Mr. Howe that are subject to that Motion. Because Mr. Howe's stricken factual statements provide the "support" for the first and second facts proffered by Footbridge above, the Court shall also disregard them for purposes of the parties' cross-motions for summary judgment.

Accordingly, the only facts that Footbridge properly advances that connect Zhang to the loan transaction at issue in this litigation are (1) that Zhang was employed as an attorney for

Cambridge in 2000, during which he performed work on commercial loan transactions, Pl.'s Stmt. ¶ 7; Def.'s Resp. Stmt. ¶ 7, and (2) that the first page of the Mortgage and Security Agreement contained a statement that "after recording," the mortgage should be sent to Zhang. Pl.'s Stmt. ¶ 13; Def.'s Resp. Stmt. ¶ 13.

### B.   *Procedural Background*

The legal issues presented in this malpractice and negligence action are far less complex than the case's lengthy history would suggest. Zhang originally removed this case from the Superior Court for the District of Columbia on March 3, 2004, and promptly filed a Motion to Dismiss six days later. After extensive briefing by the parties, the Court denied Zhang's Motion to Dismiss on March 30, 2005. *See* [25] Order at 1 (Mar. 30, 2005). The Court found that, although Zhang had raised numerous arguments that could potentially support dismissal of Footbridge's claims, Footbridge had sufficiently pled its causes of action and that factual disputes relating to the same were not appropriately resolved on a Motion to Dismiss. *See* [26] Mem. Op. at 8-14. Zhang filed a Motion for Reconsideration on April 13, 2005. Following another round of briefing by the parties, the Court denied Zhang's Motion for Reconsideration on May 2, 2005. *See* [30] Order and [31] Mem. Op. (May 2, 2005).

On July 15, 2005, Zhang filed a Motion for Summary Judgment, arguing that Footbridge could not establish the alleged damages.[6] After yet another round of briefing by the parties, the Court denied Zhang's Motion for Summary Judgment on December 15, 2006, finding that Zhang had failed to establish that no genuine issue of material fact existed with respect to Footbridge's

---

[6] As Zhang's Motion for Summary Judgment concerned only Footbridge's ability to prove damages, the motion should have been denominated as a Motion for *Partial* Summary Judgment.

damages. *See* [43] Mem. Op. at 10-22 (Dec. 15, 2006). Following this ruling, the Court ordered that no further dispositive motions were to be filed until after the parties had completed discovery. *See* [42] Order at 1 (Dec. 15, 2006).

The parties thereafter engaged in extensive and contentious discovery that resulted in the filing of no less than nine motions to compel and/or for sanctions. Each of these motions was resolved by this Court or by Magistrate Judge Alan Kay, to whom discovery matters had been assigned. Following discovery, the Court set a dispositive motions schedule for cross-motions. Pursuant to that schedule, the parties filed their Cross-Motions for Summary Judgment on July 15, 2008. Zhang filed his Opposition on July 29, 2008, and Footbridge filed its Opposition on July 30, 2008.[7] Only Zhang filed a Reply, which was submitted on August 11, 2008. The Court then ordered Footbridge to file a response to Zhang's Statement of Material Facts, which it filed on September 3, 2008. *See* Min. Order dated Aug. 27, 2008.

On August 14, 2008, Zhang filed a Motion to Strike portions of the affidavit submitted by Footbridge along with its Motion for Summary Judgment. Footbridge did not file an Opposition. On September 5, 2008, Zhang also filed a Motion to Strike a portion of Footbridge's Response to Zhang's Statement of Material facts. Footbridge similarly did not file an opposition.

## II. LEGAL STANDARD

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). In ruling upon a motion for summary judgment, the Court must view the

---

[7] Zhang also filed an Errata for each of his filings to correct several typographical errors.

evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Bayer v. United States Dep't of Treasury*, 956 F.2d 330, 333 (D.C. Cir.1992). Furthermore, in ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *See Rhoads v. McFerran*, 517 F.2d 66, 67 (2d Cir. 1975); *Long v. Gaines,* 167 F. Supp. 2d 75, 85 (D.D.C. 2001). Each moving party discharges its burden to support its motion by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). In opposing a motion for summary judgment, a party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.

### III.  DISCUSSION

Footbridge has asserted one claim of legal malpractice and one claim of negligence against Zhang. The elements of these claims are the same. *See O'Neil v. Bergan*, 452 A.2d 337, 341 (D.C. 1982) ("[t]he elements of an action for professional negligence are the same as those of an ordinary negligence action").[8]  To prove these claims, a plaintiff must establish the

---

[8] Because this is a diversity case, the Court applies the District of Columbia's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under the District of Columbia's rules, the Court must first determine whether a "true conflict" exists between the laws of competing jurisdictions. *Geico v. Fetisoff*, 958 F.2d 1137, 1141 (D.C. Cir. 1992). Where no true conflict exists, a court applies the law of the District of Columbia by default. *Id.*

applicable standard of care, that the defendant violated this standard of care, and that the violation caused a legally cognizable injury. *Id.* Footbridge's claims against Zhang must be dismissed at this stage of the litigation because they cannot meet any of the three elements.

> A. *Footbridge Cannot Establish the Applicable Standard of Care In the Absence of Expert Testimony*

In order to establish the first of element of its legal malpractice and negligence claims, Footbridge "must present expert testimony establishing the standard of care unless the attorney's lack of care and skill is so obvious that the trier of fact can find negligence as a matter of common knowledge." *Id.* The D.C. Circuit has listed examples of conduct that fall within the "common knowledge" exception:

> allowing the statute of limitations to run on a client's claim; permitting entry of default judgment against the client; failing to instruct the client to answer interrogatories; failing to allege affirmative defenses; failing to file tax returns; failing to follow the client's explicit instructions; and billing a client for time not spent providing services.

*Kaempe v. Myers*, 367 F.3d 958, 966 (D.C. Cir. 2004) (internal citations omitted). Beyond these examples, the "common knowledge" exception is narrowly applied. *See, e.g.*, *Shapiro, Lifschitz & Schram v. Hazard*, 97 F. Supp. 2d 8, 11 (D.D.C. 2000) (holding that expert testimony was needed on nearly all of the defendant's counterclaims because "a layman is not likely to know whether one or two attorneys are required to conduct a deposition, whether the refusal to perform

---

Although the parties support their arguments by reference to District of Columbia law (and they do not argue that the laws of any other jurisdiction should apply), the Court notes that the Mortgage and Security Agreement was apparently signed in Pennsylvania and the properties in which the security interests were pledged are located in Pennsylvania and New Jersey, respectively. The Court has reviewed the relevant law of these jurisdictions and compared it with the law of the District of Columbia. The Court finds that no true conflict exists between these competing jurisdictions, and the Court shall therefore apply the law of the District of Columbia by default.

[] legal services is unreasonable if past legal services have gone unpaid, or what fees and costs an attorney may properly and reasonably charge").

In this case, Zhang's Motion for Summary Judgment largely focuses on the undisputed fact that Footbridge has not established the standard of care for its malpractice and negligence claims with an expert opinion. Zhang argues that "it is well beyond the ken of the average juror to know whether an attorney in Defendant's position would have had any duty at all to file the Mortgage and, if so, what the nature of that duty and the basis of asserting that duty would have been." Def.'s Mot. for Summ. J. at 7. Zhang further argues that the causal link between his alleged failure to timely file the Mortgage and Footbridge's alleged inability to receive $2.25 Million is not at all "obvious," and requires expert testimony as to how such a breach of duty could give rise to this alleged loss. *Id.* at 9-10.

Footbridge's Opposition to Zhang's argument concerning the need to provide an expert opinion to establish the requisite standard of care consists of a two-sentence paragraph, which the Court shall reproduce in its entirety herein:

> An attorney's failure to file a lien instrument for over one-half year following a real estate closing demonstrates a lack of skill and care so obvious that the trier of fact can find negligence as a matter of common knowledge. *See Kaempe v. Myers*, 367 F.3d 958 (D.C. Cir. 2004). For this reason, Plaintiff is not required to establish a standard of care through the provision of expert testimony.

Pl.'s Opp'n at 3-4. Footbridge's response to Zhang's argument concerning causation is even more cursory and consists of a single sentence, which the Court shall reproduce in its entirety herein:

> Defendant's 'causal link' argument, on pages 9 through 11 of his Final Motion for Summary Judgment, is purely speculative and misleading.

*Id.* at 3. The Court is not persuaded by Footbridge's perfunctory reasoning.

This is not a case where Footbridge instructed one of its own attorneys to record a security interest who simply failed to follow those instructions. Zhang was employed by Cambridge, not Footbridge. Zhang is not alleged to have received any instructions from Cambridge with which he failed to comply, but rather is alleged to have violated some unspecified obligation to a third party to record the mortgages at issue. It is entirely unclear what duties an attorney owes not only to his client, but to a third-party, by merely attending a loan closing (even assuming there was evidence that Zhang attended the closing, which there is not). Footbridge implies that attorneys in this position are not ordinarily expected to assume an obligation for recording mortgages because title insurance companies usually perform this task. *See* Pl.'s Mot. for Summ. J. at 3 ("Defendant instructed Lawyers Title Insurance Company that the New Jersey properties were not to be insured with title insurance. Since title insurance was not obtained for the New Jersey properties, it was understood by the title company that Mr. Zhang would attend to the recording of the mortgage on the New Jersey properties"). Without expert testimony, the nature and scope of duties that would arise for attorneys in Zhang's position–and to whom those duties are owed–are simply conjectural. Accordingly, the Court finds the standard of care necessary to prove Footbridge's claims is unlikely to be within the "common knowledge" of an average juror.

Equally problematic for Footbridge's claims is that Footbridge has not supported its theory of resulting damages with an expert opinion. Footbridge argues that a security interest was recorded prior to its own, thereby giving rise to a claim with higher priority that reduced its recovery when the Borrowers filed for bankruptcy. Zhang has previously argued that this theory

is deficient because there were other, unrelated liens on the properties that would have prevented the recovery as to which Footbridge asserts it is entitled. *See* [43] Mem. Op. at 5 (Dec. 15, 2006) (describing the basis for Zhang's Motion for partial Summary Judgment). To evaluate the parties' conflicting evidence, the jury would need to know the effect that priority security interests have on properties subject to multiple unrelated liens, and particularly how those liens are paid when they are subject to a bankruptcy proceeding. The Court agrees with Zhang in his Motion for Summary Judgment that these determinations require more than the "common knowledge" of the average juror, and is not persuaded otherwise by Footbridge's non-responsive argument that the problems associated with the absence of expert testimony are "speculative" and "misleading." Pl.'s Opp'n at 3.

Because Footbridge did not produce a timely expert report in this case, it is precluded from offering expert testimony at trial necessary to support its claims.[9] *See* [46] Order at 6 (Jan. 18, 2007) (setting deadline for expert witness disclosures as March 23, 2007). Accordingly, the Court shall grant Zhang's Motion for Summary Judgment and deny Footbridge's Motion for Summary Judgment.

> B.   *Footbridge Cannot Establish that Zhang Breached a Standard of Care*

Even if Footbridge could establish the requisite standard of care owed by an attorney in Zhang's position (which the Court has expressly held it cannot in the absence of expert testimony), Footbridge's malpractice and negligence claims must be rejected at this stage because there is no evidence in the record that Zhang breached this unspecified standard. As described

---

[9] The Court notes that Footbridge has not requested an extension of time to produce an expert report.

above, the only facts that Footbridge properly advances that support its allegations that Zhang breached a standard of care are (1) that Zhang was employed as an attorney for Cambridge in 2000, during which he performed work on commercial loan transactions, Pl.'s Stmt. ¶ 7; Def.'s Resp. Stmt. ¶ 7, and (2) the first page of the Mortgage and Security Agreement states in the upper right-hand corner that "[a]fter recording," the agreement should be sent to Zhang. Pl.'s Stmt. ¶ 13; Def.'s Resp. Stmt. ¶ 13.[10]

Zhang has consistently denied his involvement in the loan transaction throughout this case. During his deposition, Zhang testified that he had visited Pennsylvania (the site of the loan closing) only twice, once for skiing and another time to visit a forest. Def.'s Opp'n, Ex. 1 at 101:1 - 101:14 (Depo. Tr. of J. Zhang). Zhang could not recall ever having attended a closing besides the closing on his own home. *Id.* at 103:16 - 103:18 ("Q: Have you ever attended a closing, other than buying your own house? A: Not to my recollection"). He also testified that he does not recall ever having reviewed or revised a mortgage, security agreement, or participation agreement. *Id.* at 38:7 - 39:4.

The mere fact that Zhang was employed as an attorney for Cambridge in 2000 and performed work on commercial loan transactions provides no basis from which a reasonable jury could infer that he attended the loan transaction at issue and undertook the obligation to record Footbridge's security interests in the New Jersey properties. Similarly, the fact that the first page

---

[10] The Participation Agreement obligated Cambridge "to maintain books to account for the loan, and, without limitation, provide all services necessary and reasonable to administer and collect sums due under the loan and monitor the status of the collateral for the sole and exclusive benefit and use of [Footbridge]." Pl.'s Stmt. ¶ 4. To the extent Footbridge believes this provision obligated Cambridge to record the mortgage on the New Jersey property, it would appear to support a claim against Cambridge, not Zhang.

of the Mortgage and Security Agreement directed an unspecified person to forward the document to Zhang after recording provides no evidentiary basis to find that Zhang was the individual responsible for recording the mortgage.  At bottom, Footbridge proffers no facts supported by evidence that connect Zhang to the loan transaction at issue, nor any facts suggesting that Zhang undertook and breached a legal obligation that he owed to Footbridge.  Accordingly, the Court shall grant Zhang's Motion for Summary Judgment and deny Footbridge's Motion for Summary Judgment.

> C.     *Footbridge Cannot Establish That It Has A Legally Cognizable Injury*

Footbridge's claims suffer from an additional defect based on its theory that Footbridge was a third-party beneficiary of the attorney-client relationship between Zhang and Cambridge. *See* Pl.'s Mot. for Summ. J. at 4 ("pursuant to the Participation Agreement, Cambridge was under a duty to represent the interest of Plaintiff in the transaction, and that Plaintiff was an intended beneficiary of Cambridge's work on the transaction").  The Court initially allowed Footbridge to proceed with its claims on this theory because "[w]hether or not Plaintiff was the direct and intended beneficiary of the relationship [was] a factual inquiry that [was] inappropriate at the motion to dismiss stage." [26] Mem. Op. at 14 (Mar. 30, 2005).  At this summary judgment stage, however, the Court must examine the evidence in the record, not the allegations in Footbridge's Complaint.[11]

Under District of Columbia law, a third-party may have standing to sue an attorney as a

---

[11] Zhang's Motion for Summary Judgment raised an issue of Footbridge's "standing" to assert its claims against Zhang.  *See* Def.'s Mot. for Summ. J. at 11.  Although his argument is somewhat confusingly stated, it appears that Zhang is arguing that Footbridge cannot recover for an alleged breach of a standard of care owed by Zhang, which the Court finds to be more appropriately raised in the context of Footbridge's third-party beneficiary theory.

third-party beneficiary. *See Williams v. Mordkofsky*, 901 F.2d 158, 163 (D.C. Cir. 1990). "The third party, however, must allege more than mere harm from the conduct in question. He must show in addition that he was 'the direct and intended beneficiary of the attorney-client relationship.'" *Id.* (quoting *Needham v. Hamilton*, 459 A.2d 1060, 1061-63 (D.C. 1983)).

There is a dearth of evidence in the record supporting this third-party beneficiary relationship. In particular, there is no evidence that Zhang intended Footbridge to be a beneficiary of his work on the loan transaction, nor evidence that he was even aware of the existence of Footbridge or the loan transaction. There is a similar lack of evidence concerning Cambridge's intent. Although Footbridge relies on the Participation Agreement executed between Footbridge and Cambridge for support, not only is there no provision that identifies Footbridge as a third-party beneficiary, the agreement simply states that "[n]othing contained herein shall be construed to constitute a partnership or other legal affiliation of any party to any other party to this Agreement." Pl.'s Mot. for Summ. J., Ex. 2 at 6 (11/30/00 Participation Agreement). Similarly, the Mortgage and Security Agreement contains a provision titled "No Third Party Benefits," which states that "[t]his Mortgage and other Loan Documents are made for the sole benefit of [Cambridge] and [the Borrowers] and their successors and assigns, and no other party shall have any legal interest of any kind under or by reason of any of the foregoing." *Id.*, Ex. 3 ¶ 43. Although Footbridge states in passing that it is "the assignee under the note and Deeds of Trust by which Cambridge is secured," *see* Pl.'s Stmt. ¶ 21, Footbridge only provides a general citation to the Mortgage and Security Agreement for support, even though that agreement was executed between Cambridge and the Borrowers and does not appear to have a provision directing an assignment between Footbridge and Cambridge.

On this record, there is insufficient evidence from which a jury could find that both Zhang and Cambridge intended Footbridge to be a third-party beneficiary of their attorney-client relationship. For this reason, and for all of the other reasons discussed above, Footbridge's claims must fail at this stage of the litigation.

## IV.  CONCLUSION

For the reasons set forth above, the Court shall GRANT Defendant's [102, 104] Motions to Strike, shall GRANT Defendant's [95] Motion for Summary Judgment, and shall DENY Plaintiff's [96] Motion for Summary Judgment. This case shall be dismissed in its entirety. An appropriate Order accompanies this Memorandum Opinion.

Date: November 5, 2008

/s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge